# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 54123-8-II |
| Respondent, | |
| v. | |
| AARON ROBERT FARMER, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, C.J. — Aaron R. Farmer appeals his convictions for possession of a stolen motor vehicle and forgery. Farmer argues that the prosecutor committed misconduct during closing arguments and that the trial court erred by denying his request for surrebuttal testimony. We affirm Farmer's convictions.

## FACTS

### A. BACKGROUND FACTS

Sydney Farris bought a 1985 Honda Prelude from Tanner Taylor in late 2018. One day, Farris returned home from work and the vehicle was gone. Farris reported the vehicle stolen.

Officer Doug Keldsen of the Vancouver Police Department was on patrol on April 4, 2019. Around 5 p.m., Officer Keldsen contacted a vehicle in a church parking lot. It was unusual to see a vehicle in the parking lot at that time. When Officer Keldsen approached the vehicle, he could see that the speakers had been removed and were on the backseat. It also looked like the car stereo had been removed from the console.

Officer Keldsen contacted the person who was in the vehicle. Although the person did not give Officer Keldsen his name, the person was later identified as Farmer. Farmer told Officer Keldsen that the vehicle belonged to his friend, and his friend was planning to scrap the vehicle.

Farmer provided the title, bill of sale, and registration for the vehicle to Officer Keldsen. The title identified Aaron Farmer as the owner of the vehicle. During the contact with Officer Keldsen, Farmer stated that "Aaron Farmer" was his friend who owned the vehicle. 3 Verbatim Report of Proceeding (VRP) at 348.

Officer Keldsen called dispatch to run the license plate number. Dispatch identified the vehicle as stolen. Keldsen placed Farmer under arrest.

The State charged Farmer with possession of a stolen motor vehicle and forgery. The case proceeded to a jury trial.

B.    TRIAL TESTIMONY

Farris and Officer Keldsen testified to the facts stated above. Farris also testified that prior to the car being stolen, everything was in it, including speakers and the ignition. The car needed some tune-ups, but it was drivable. When Farris got the car back, multiple things were missing from it. The speakers and the radio were gone. The ignition was also torn off.

Farris identified a document that purportedly was the registration and title that she had signed when she purchased the vehicle. However, her signature had been altered on the documents.

Farmer testified that he first saw the Honda parked near an apartment building with a "for sale" sign in the window. 4 VRP at 434. Farmer called the number and arranged to see the car. Farmer bought the vehicle for $500 from "Tanner Taylor." 4 VRP at 436. Farmer stated that he could not move the car right away because it had no ignition.

On April 4, three days after purchasing the vehicle, he replaced the ignition. A few hours later, the car broke down at the top of a hill. Farmer coasted the car down to the bottom the hill into the parking lot of a church. Farmer decided to scrap the vehicle. Farmer removed the stereo and speakers from the vehicle.

The State called Officer Keldsen for rebuttal testimony. Officer Keldsen testified that it would have been very difficult to get the car down the hill and into the corner of the parking lot if it had not been running. Officer Keldsen also testified that Farmer never identified himself as the owner of the vehicle or claimed to have purchased the vehicle.

Farmer's counsel sought to call Farmer for surrebuttal testimony. The trial court asked whether there was authority allowing a defendant surrebuttal in a criminal case. Farmer's counsel responded,

> Well, of course, there is. He is going to respond to the testimony brought out by this officer because the implication that they want to draw is, is that he could not have drifted the vehicle to where it ended up. Mr. Farmer is going to testify that, yes, he drifted into the parking lot and he was directed to put the car there and he pushed it into that spot.

4 VRP at 466. The State argued that Farmer already had the opportunity to testify to those facts. The trial court ruled,

> I'm going to disallow the surrebuttal. I don't think it's appropriate. I've never seen it. If there is authority, let me know.

4 VRP at 467.

C.    JURY INSTRUCTIONS, CLOSING ARGUMENTS, AND VERDICTS

The trial court instructed the jury on the definition of knowledge:

> A person knows or acts knowingly or with knowledge with respect to a fact, circumstance, or result when he or she is aware of that fact, circumstance, or result. It is not necessary that the person know that the fact, circumstance, or result is defined by law as being unlawful or an element of a crime.

3

If a person has information that would lead a reasonable person in the same situation to believe that a fact exists, the jury is permitted but not required to find that he or she acted with knowledge of that fact.

When acting knowingly as to a particular fact is required to establish an element of a crime, the element is also established if a person acts intentionally as to that fact.

Clerk's Papers (CP) at 85.

During closing argument, the State reviewed the definition of knowledge. As to the knowledge requirement for the possession of a stolen motor vehicle charge, the State argued,

Ladies and gentlemen, a reasonable person in that situation, regardless of which side you believe, should have known that vehicle was stolen. Officer Keldsen testified that when he contacted the defendant, he seemed nervous and evasive. He kept changing the questions. He didn't answer a question directly; instead, he would provide something else. Instead of providing his name, he provided the title and the bill of sale.

. . . .

In addition, the ignition had been tampered with. Even by his own version of events, a reasonable person in that situation should have known that car was stolen. You're buying a car from someone you don't know, someone who doesn't identify themselves over the phone by any sort of name, doesn't provide any identification to certify that they are the owner that's on that title, their signature is all over that title making it look very suspicious. There is no ignition in the vehicle. There is not even an ignition key. There is only a door key. Any reasonable person in this situation should have known that car was stolen. So even accepting his facts, he should have known that car was stolen.

Ladies and gentlemen, the State has proven that the defendant knew through his actions and his words because he was evasive, because he kept changing his story, because he refused to identify himself as the owner of this vehicle. Ladies and gentlemen, the State submits to you that a reasonable person who believes themselves to be the rightful owner of a vehicle would identify themselves as such. A reasonable person isn't going to pretend that this belongs to someone else while providing the documents that could prove ownership. That shows knowledge.

4 VRP at 502-04.

As to the knowledge requirement for the forgery charge, the State argued,

The second question is whether or not he knew the instrument had been falsely made. So again, remember what we talked about. Knowledge can be proven through actions and words and that a reasonable person in that situation you believe a reasonable person should have known, then you're allowed to infer. Well, ladies and gentlemen, a reasonable person looking at this title should have known that it was forged. You are allowed to infer that he knew.

Additionally, there was circumstantial evidence that he knew because he tried to distance himself from this title. He didn't hand this to Officer Keldsen and say, "I'm Aaron Farmer. Here, I bought this car." That's not what happened. He said, "My friend bought this car." Here's the title that showed my friend bought this car. He tried to put space between himself and this title. That is circumstantial proof that he knew that this title was forged.

4 VRP at 506.

In rebuttal, the State argued,

The defendant's story has not been consistent. He had an opportunity to tell Officer Keldsen that he bought this vehicle. He had an opportunity to explain to him what happened. He had an opportunity to show the officer that he purchased this vehicle, but he didn't take that opportunity. The State submits to you he didn't take that opportunity because he knew, he knew that that car was stolen. The fact that he distanced himself from that title, the fact that he distanced himself from that bill of sale, and the fact that he distanced himself from that registration, that is circumstantial proof that he knew.

But even if you accept his version, even if you accept his version that he just bought a car from some dude he has never met, who didn't verify his name, who provide—who gave him a car that didn't have a key to the ignition, didn't have an ignition in it, even if you accept those facts as true, a reasonable person in that situation should have known that car was suspect, that car was stolen. A reasonable person should have questioned that transaction. And if you believe that a reasonable person should have known that car is stolen, then you are able to find that he knew.

4 VRP at 518-19.

The jury found Farmer guilty of possession of a stolen motor vehicle and forgery. Farmer appeals his convictions.

5

ANALYSIS

A.    PROSECUTORIAL MISCONDUCT

Farmer argues that the prosecutor committed misconduct by arguing that the jury could find Farmer guilty based on what a reasonable person should have known. We disagree.

To prevail on a claim of prosecutorial misconduct, a defendant must show that the prosecutor's conduct was both improper and prejudicial. *State v. Emery*, 174 Wn.2d 741, 756, 278 P.3d 653 (2012). The prosecutor's conduct is viewed in "'the context of the total argument, the issues in the case, the evidence addressed in the argument, and the instructions given to the jury.'" *State v. Monday*, 171 Wn.2d 667, 675, 257 P.3d 551 (2011) (internal quotation marks omitted) (quoting *State v. McKenzie*, 157 Wn.2d 44, 52, 134 P.3d 221 (2006)).

First, we determine whether the prosecutor's conduct was improper. *Emery*, 174 Wn.2d at 759. If the prosecutor's conduct was improper, then the question turns to whether the prosecutor's improper conduct resulted in prejudice. *Id.* at 760. To establish prejudice, the defendant must show a substantial likelihood that the prosecutor's misconduct affected the verdict. *Id*.

A prosecutor improperly misstates the law if the prosecutor argues that the State is not required to prove actual knowledge, but only that a defendant should have known. *State v. Allen*, 182 Wn.2d 364, 374-75, 341 P.3d 268 (2015) ("[T]he 'should have known' standard is incorrect; the jury must find that Allen *actually knew* Clemmons was going to murder the four police officers."); *State v. Jones*, 13 Wn. App. 2d 386, 405, 463 P.3d 738 (2020) (prosecutor misstated the law when "the attorney repeatedly encouraged the jury to convict Jones based on what he should have known without ever mentioning that the jury can convict only if Jones actually knew the car to be stolen."). However, it is proper to argue that the jury may infer actual knowledge if the defendant had information which would lead a reasonable person to believe the fact at issue.

*Allen*, 182 Wn.2d at 374; *see also Jones*, 13 Wn. App. 2d at 405 ("[A] jury cannot convict the accused based on constructive knowledge, but may determine constructive knowledge to be evidence of subjective knowledge.").

Here, the State argued that the jury should find that Farmer knew the car was stolen and the title was forged because a reasonable person should have known based on the circumstances. The State did not argue that what Farmer should have known was sufficient, and the State never argued that the jury did not need to find actual knowledge. *See Allen*, 182 Wn.2d at 374. Instead, the State properly argued that the jury could infer Farmer's actual knowledge from circumstantial evidence and what a reasonable person should have known in the same situation. This is not a misstatement of the law. *Id.* Therefore, the prosecutor's statements were not improper. Because the prosecutor's statements were not improper, Farmer's prosecutorial misconduct claim must fail.

Furthermore, even if the prosecutor's statements were improper, Farmer has waived any such error. Because Farmer did not object to the prosecutor's arguments, he "is deemed to have waived any error, unless the prosecutor's misconduct was so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice." *Emery*, 174 Wn.2d at 760-61. Under this heightened standard of review, the defendant must show that "(1) 'no curative instruction would have obviated any prejudicial effect on the jury' and (2) the misconduct resulted in prejudice that 'had a substantial likelihood of affecting the jury verdict.'" *Id.* at 761 (quoting *State v. Thorgerson*, 172 Wn.2d 438, 455, 258 P.3d 43 (2011)). The focus is on whether the resulting prejudice could have been cured. *Id.* at 762.

Here, the trial court properly instructed the jury on the definition of knowledge. If Farmer had timely objected to the prosecutor's arguments, the trial court could have cured any prejudice by striking the improper argument, reiterating the correct definition of knowledge, and reminding

the jury they "must disregard any remark, statement, or argument that is not supported by the evidence or the law in my instructions." CP at 76. Therefore, a curative instruction could have cured any prejudice caused by the prosecutor's argument, so Farmer has waived any alleged prosecutorial misconduct error.

B.      SURREBUTTAL TESTIMONY

Farmer also argues that the trial court abused its discretion by denying his request for surrebuttal testimony. Specifically, Farmer argues that the trial court's decision was made for untenable reasons because the trial court categorically denied his request to present surrebuttal testimony based on a misunderstanding of the law. Assuming, without deciding, that the trial court abused its discretion by denying the request for surrebuttal, we hold that any error was harmless.

Here, Farmer testified that when the car broke down, he coasted it down the hill into the parking lot. In rebuttal, Office Keldsen testified that it would have been very difficult to get the car down the hill and into the corner of the parking lot if the car was not running. Farmer requested surrebuttal to testify that he coasted into the parking lot and then pushed the car into the parking space. Therefore, the only testimony that Farmer alleges was improperly excluded by the trial court was his testimony that he ultimately pushed the car into the parking space.

Even if we assume without deciding that the trial court did abuse its discretion by excluding Farmer's surrebuttal testimony, the error was harmless. Under the nonconstitutional harmless error standard, the party presenting the issue for review must show a reasonable probability that the error materially affected the outcome of the trial. *State v. Barry*, 183 Wn.2d 297, 317-18, 352 P.3d 161 (2015).

Farmer was charged with possession of a stolen motor vehicle and forgery. To prove Farmer was guilty of possession of a stolen motor vehicle, the State had to prove that Farmer

8

knowingly received, retained, possessed, concealed, or disposed of a stolen motor vehicle; Farmer knew the motor vehicle was stolen; Farmer withheld the motor vehicle from the true owner; and the acts occurred in Washington. There was no dispute that Farmer was in possession of the car or that the car was stolen. The fundamental issue was whether Farmer knew the car was stolen. The State relied on the condition of the car, specifically the missing ignition, and Farmer's evasiveness and refusal to identify himself as the alleged owner of the vehicle to show that Farmer knew the vehicle was stolen. The State did not reference Farmer's explanation of how the car got into the parking space. And how Farmer got the car into the parking space is irrelevant to whether he knew the car was stolen. Therefore, Farmer has not shown that exclusion of his surrebuttal testimony materially affected the outcome of trial on the possession of a stolen motor vehicle charge.

To prove that Farmer was guilty of forgery, the State had to prove that Farmer possessed a vehicle title which had been falsely made or altered, Farmer knew the title had been falsely made or altered, Farmer intended to injure or defraud, and the acts occurred in Washington. There was no dispute that the vehicle title had been altered. And the State relied on visible alterations to the vehicle title and Farmer's attempt to distance himself from the title to prove that he knew the vehicle title was forged. The State also argued that Farmer had the intent to injure or defraud because his intent was to show that the vehicle was his rightfully owned vehicle. Farmer's testimony that he pushed the vehicle into the parking space would have had no material effect on the outcome of the trial on the forgery charge. Therefore, because the exclusion of Farmer's surrebuttal testimony—that he pushed the vehicle into the parking space—had no material effect on the outcome of Farmer's trial, any error was harmless.

We affirm Farmer's convictions.

9

No. 54123-8-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____, C.J.
Lee, C.J.

We concur:

_____
Maxa, J.

_____
Sutton, J.